No. 63
### N. Y. CENT. SECURITIES CORP. v. C. C. C. & ST. L. RY. CO.

Cuyahoga County Court of Appeals.
(No. 4474, decided Nov. 27, 1922.)

VICKERY, J.

### Epitomized Opinion

Appeal from the Court of Common Pleas

This case was started upon an agreed statement of facts and exhibits. It was brought to enjoin the defendant company from entering into and carrying out a certain agreement between the Guaranty Trust Co., as trustee, and five of the associated companies of the New York Central lines, among which was the defendant company and presents the issue of twenty-seven million dollars in certificates to be used in the purchase of rolling stock, to be apportioned among the different companies by the Inter-State Commerce Commission. The agreement was entered into for a large purchase in order to get a reduced price. The agreement provided that each of the companies should pay a certain rental each month for the part apportioned to it, for fifteen years, at the end of which each company would own absolutely the property apportioned to it. One of the preferred stockholders of the defendant company brought the action alleging that it violated a consolidation charter agreement of the several New York Central Lines, that they should not guarantee or become a surety for any other company of the system, unless fifty per cent of the preferred stock had agreed to such action. This had not been received in this case, and an injunction was granted by the common pleas court.

The first contention is failure for want of parties, so many of the interested ones not being before the court. It is also contended that the agreement was a guarantee of the liability of other parties. That although called a lease, it was nothing more than a conditional sale, whereby the various railway companies pooled their financial strength in buying.

1. Is the agreement a loaning of credit by the defendant to the associates, and if so is it ultra vires? Is it a conditional sale, on which each company is merely liable for its own equipment only, and in no sense loans its credit to the others?

The agreement contains a clause pertaining to defaults which says:

"In case the railroad companies shall at any time make default in the payment of any part of the rental in the lease or leases reserved * * * the trustee shall be entitled to enforce all the terms and stipulations of the lease or leases for the benefit of the holders of the certificates. In case the trustee shall retake possession of the equipment, it either may hold, or may lease, or publicly or privately and for cash or upon credit, may sell or dispose of said equipment, or any part thereof, as the trustee in its discretion may deem most beneficial to the holders of the certificates and as may be authorized by law."

In commenting on this point the court said that it was unable to see how one of the railways by the agreement becomes obligated to assume the liability of another. Instead of being a lease wherein the performance of one company was guaranteed by another, it was a conditional sale contract, and was a means of arriving at the best method of purchasing this property, and at the same time protecting the certificate holders. To that ultimately, when all of them were paid, the property and title thereto would vest in each respective purchasing company. The court cited the case of Venner v. N. Y. Cent. Ry., decided on the same facts as are in this case, 217 N. Y., 615, and a similar case between the same parties in the U. S. district court at Cleveland, decided recently by Judge Westenhaver, in which he held, that although the purchase by the defendant is joint and several with other railroads, it is provided that if one of the other railroads defaults, any one remaining can step in and take the defaulting company's equipment, by making good the rent in arrears. This, it is stated, is a conditional purchase company's equipment by making good the rent in a debt. The Pollits case, 96 OS. 49, was also cited.

2. When this suit was brought in the common pleas, the defendant company had not procured the consents of a majority of the preferred stockholders. It is also to be observed that by the charter of the Big Four Railway the power to enter into such a contract is given, but before it is exercised the necessary stockholder consents must be obtained. By this provision the power existed, and if an attempt is made to exercise it before the consents are ob-

tained, it is an irregularity of the exercise of the power, and not the ultra vires act.

3. When this case was appealed the defendant company filed an amendment setting up that it had acquired consents from a majority of the preferred stock, and therefore the objection upon which the common pleas granted the injunction had been removed. It might have been impossible to cure this defect in the common pleas, but this being a court of equity, pleadings can be amended at any stage of the proceedings, and when the case was herein heard, the reason for granting the injunction no longer existed. The power to enter into a contract of this kind existing by virtue of the railway charter, and at best being but an irregularity, in going forward before the consents were obtained, which was cured subsequently. Whatever import there was in the court below to grant the injunction had been clearly obviated by the amendment and the proof in the case, when it was heard in this court de novo, after a majority of the preferred stock had consented to the trust agreement.

4. It is alleged in the petition, that the defendant, a corporation organized under the laws of Ohio, "is about to enter into an ultra vires contract with four other railroad companies, who are not in the jurisdiction of the state of Ohio," but if the interests and rights of the stockholders are jeopardized by this so-called agreement, and the court has jurisdiction of the subject matter and over the parties that are in court, the fact that it cannot get jurisdiction over other parties who live outside the state, does not deprive this court of its power, to protect the stockholders of the Ohio corporation, and prevent a wrong being perpetrated upon them. If such were the case, an injunction could be granted to protect the Ohio stockholders, and prevent the corporation from going into combination or agreement, even though it might injure the other corporations. There are parties enough in the court so that it can have jurisdiction over the subject matter, and over the parties that are in court.

Injunction denied, temporary injunction dissolved, and petition dismissed.

**Attorneys**—Snyder, Henry Thomsen, Ford & Seagrave, for Securities Co.; Samuel H. West for the Big Four.

---

## WINTER CROP OF NEW LAWYERS

### 158 PASS STATE BAR EXAMINATIONS

Out of the 212 applicants who took the Ohio state bar examination at Columbus, Dec. 5-6, 158 passed. Highest grade, 92.75 per cent, was won by Ralph Wickham Jones, Cleveland, a Harvard law school graduate, born at Norwalk, and a scion of the famous Judge Frederick Wickham, in the progeny of whom are several well known lawyers. Albert K. Loaris, Ravenna, won the second highest grade, 87.6 per cent. The class will be sworn in before the supreme court in Columbus December 29.

The following is a list of the successful applicants with their addresses:

Ernest L. Cunningham, 316 Power St., Akron.

Faber J. Drukenbred, 705 Fulton Rd., N. W., Canton.

Clarence Ashcraft Graham, Dresden.

Thomas Donovan Hopkins, 707 Vernon St., Ironton.

Henry C. King, 2000 West Erie St., Lorain.

Karl A. Meihener, 1153 Jefferson St., Akron.

Michael J. Palkovic, 604 Samuel St., Youngstown.

Pasquale Pomaro, 238 Carlton St., Youngstown.

Virgil E. Rogers, 985 Amelia St., Akron.

Paul L. Schlegel, 639 Carpenter St., Akron.

Harold W. Slabugh, 142 South Union St., Akron.

Harold Arthur Sowash, 57 Bartley Ave., Mansfield.

William Allen Summit, 220 Fulton St., Youngstown.

Paul Graf Weber, 1224 Worley Ave., N. W., Canton.

Aubrey A. Wendt, 513 East Exchange St., Akron.

Frederick T. Childs, 401 Douglas St., Akron.

Paul C. Scearce,, 1126 Bristol Terrace, Akron.

Anthony A. Wagner, 920 Bloomfield Ave., Akron.

### Cleveland List

Lester J. Abele, 1124 Eddy Rd.

Joseph M. Binns, 1705 Lee Rd.

Stanton Addams, 1902 Wadena Ave.

Harold T. Amerman, 12349 Euclid Ave.

Charles Auerbach, 9813 North Blvd.

Elmer E. Airing, 704 E. 128th St.

Jos. T. Bergeron, 13804 Lake Shore Blvd.

Robert M. Boyd, 10819 Magnolia Dr.

Joseph M .Binna, 1705 Lee Rd.

Paul Blasie, Jr., 3715 W. 18th St.

John S. Brezina, 3692 E. 49th St.

Edwin H. Chaney, 1456 Louderdale Ave.

Mrs. Clara E. Christopher, 8618 Cedar Ave.

Louis G. Cole, 9917 Parkgate Ave.

Albert H. Cornsweet, 10806 Kinsman Rd.

John P. Cullen, 7401 Harvard Ave.

Patrick Clarke Bratenahl.

Edwin C. Dean, 10804 Hathaway Ave.

James B. Dolphin, 1689 E. 85th St.

S. F. Dembowski, 4146 E. 131st St.

Alex C. Dick, Y. M. C. A.

William A. Endle, 3223 Clarendon Rd.

Henry W. Elsner, 3226 E. 126th St.

John Q. T. Ford, 2048 E. 115th St.

Chester H. Gurney, 2050 E. 81st St.

Andrew J. Hagan, 2031 W. 48th St.

Milton J. Harris, 2187 E. 80th St.

Austin A. Higgins, 1860 E. 86th St.

Ralph W. Jones, 2021 E. 115th St.

Donald Kennedy, 1880 E. 79th St.

Frank F. Lahut, 3433 W. 41st St.

Henry J. Leasure, 1773 Auburndale Ave, East Cleveland.

Joseph C. Little, Y. M. C. A.

Nicolo Lombardo, 2534 East St.

Frank C. Lyons. 2206 E. 80th St.

Raymond D. Metzner, 5428 Detroit Ave.

Oscar Milkove, 10515 Hathaway St.

John H. Miller, 2210 Cornell Rd.

Malcolm E. Molner, 1644 Ansel Rd.

Edward T. Murray, 3401 Clinton Ave.

William J. Nealon, 5801 Bridge Ave.

Edwin C. Reminger, 498 E. 117th St.

Clarence W. Portman, 2440 Overlook Rd.

Richard F. Roberts, 1611 Lake Front St.

Harry S. Rose, 1312 E. 92d St.

Charles Sovish, 917 Literary Rd, S. W.

Daniel W. Shelman, 7401 Harvard Ave.

Vincent K. Smith, 13333 Bellflower Rd.

John I. Thompson, 9213 Miles Ave. S. E.

Lowell Turrentine, 1882 W. 66th St.

Herman L. Vail, 9432 Lake Shore Blvd.

Oscar Warga, 5605 Quinby Ave.

Fifty-two Clevelanders were among the 158 who passed. All four women in the class passed. Fifty-four men failed.